Self-Represented Plaintiff
Oleg Churyumov
1037 NE 65th St #81067 Seattle, WA 98115
Phone: 9175141426
Email: oleg.churyumov@gmail.com

FILED
2018 DEC 28 09:00 AM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 18-2-58244-0 SEA

# KING COUNTY SUPERIOR COURT

| | |
|---|---|
| OLEG CHURYUMOV<br><br>Plaintiff,<br><br>v.<br><br>AMAZON CORPORATE LLC;<br>UWAIS KHAN;<br>EDWIN MWANGO;<br>ANDREW BERG;<br>JOE RESUDEK;<br>ROBIN MENDELSON;<br>JEFF BEZOS;<br>BETH GALETTI<br><br><br>Defendants. | CASE NO.:<br><br>COMPLAINT FOR VIOLATION OF:<br><br>(1) TITLE VII OF THE CIVIL RIGHTS ACT OF 1964;<br>(2) AMERICANS WITH DISABILITIES ACT OF 1990;<br>(3) FAMILY AND MEDICAL LEAVE ACT OF 1993;<br>(4) 49.60 RCW DISCRIMINATION;<br>(5) 49.12 RCW INDUSTRIAL WELFARE;<br>(6) BREACH OF IMPLIED CONTRACT<br><br>JURY TRIAL DEMANDED |

Plaintiff Oleg Churyumov, alleges the following:

## I.   SUMMARY

1.      Amazon is the largest online retail company with a huge IT infrastructure. Churyumov was employed by Amazon as a software engineer. Churyumov started working for Amazon hoping to input his engineering skills, get valuable experience and participate in cutting edge technology innovations.

2.      Instead, Churyumov met unlawful discrimination, mockery and mental torture. Churyumov's supervisor implemented hostile environment towards Churyumov and his family. He created culture of genocide towards disabled relatives. He constantly abused his discretion and lied.

3.      Human Resource division of Amazon was created to control anti-discrimination policies and prevent violation of the law. Instead of that, HR appreciated and supported discrimination. HR did not prevent unlawful supervisor's actions. But HR appreciated these actions and aggravated negative consequences.

4.      Not only such conduct was a clear violation of Churyumov's right to work in environment free of discrimination. Churyumov's family suffered also. As a result of supervisor's actions, Churyumov's child needed continuous treatment. Churyumov's wife became single parent, Churyumov became disabled.

## II.   NATURE OF THE ACTION

5.      This is an action for relief from unlawful actions under Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act of 1990, Family and Medical Leave Act of 1993, 49.60 RCW Discrimination, 49.12 RCW Industrial Welfare, Breach of implied contract.

6.      Plaintiff Oleg Churyumov alleges that Defendants and their agents, employees unlawfully discriminated against him on the basis of his national origin characteristics, retaliated against him.

7.      Plaintiff further alleges that Defendants unlawfully discriminated against him based on the association with disabled child, retaliated against him.

8.      Plaintiff further alleges that Defendants violated industrial welfare standards by punishing him for taking care of sick disabled child, retaliated against him.

9.      Plaintiff further alleges that Defendants violated industrial welfare standards by establishing inhuman working schedule, retaliated against him.

10.      Plaintiff further alleges that Defendants violated implied contract.

11.      Plaintiff seeks injunctive and declaratory relief, compensatory damages, punitive damages, liquidated damages, and costs as remedies for

Defendants' violations of his rights.

## III.   THE PARTIES

12.    Plaintiff Oleg Churyumov is White Russian. He was born in Russia. He worked as a software engineer for Defendant Amazon Corporate LLC from 06/26/2017. Since January 2018, he became single parent with disabled child.

13.    Defendant Amazon Corporate LLC (hereinafter "Amazon"), is a retail company that maintains worldwide office locations employing approximately 600,000 individuals. Defendant operates an office in Seattle, and all of the events alleged herein occurred while Churyumov was employed by Amazon in that office.

14.    Defendant Uwais Khan is software development manager. He was supervisor of Churyumov during all the time of events alleged herein.

15.    Defendant Edwin Mwango is HR specialist responsible for investigations of complaints about discrimination.

16.    Defendant Andrew Berg is HR responsible for serving the team of Churyumov and Khan.

17.    Defendant Joe Resudek is supervisor of Khan.

18.    Defendant Robin Mendelson is supervisor of Resudek.

19.    Defendant Jeff Bezos is CEO of Amazon.

20.    Defendant Beth Galetti is HR Director of Amazon.

21.    At all times relevant herein, Amazon had at least fifteen employees, and was therefore an "employer" within the meaning of Title VII, Americans with Disabilities Act of 1990, Family and Medical Leave Act of 1993, 49.60 RCW, 49.12 RCW.

22.    Amazon is liable for the acts of its employees as set forth below.

23.    Plaintiff is informed and believe and thereon allege that at all times relevant herein, Defendants were responsible in some manner for the occurrences and injuries alleged in this complaint.

## IV.   JURISDICTION AND VENUE

24.    This Court has concurrent jurisdiction over Title VII of the Civil Rights Act of 1964. State and federal courts have concurrent jurisdiction of federal law claims where Congress neither expressly nor implicitly prohibits state court jurisdiction (Claflin v. Houseman, 93 U.S. 130, 136 (1876)).

25.    This Court has concurrent jurisdiction over American with Disabilities Act claims. (Yellow Freight System, Inc. v. Donnelly, 494 U.S. 820 1990). The U.S. Supreme Court has consistently held that state courts have inherent authority, and are thus competent, to adjudicate claims arising under the laws of the United States.

26.     This Court has concurrent jurisdiction over FMLA claims under section 107(a)(2) of Family Medical Leave Act.

27.     This Court has jurisdiction over the related state laws RCW 49.60 and RCW 49.12 claims because they are under jurisdiction of state courts. Those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with their federal law claims, and the parties are identical. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

28.     Venue is proper in, and Defendants are the subject to the personal jurisdiction of this Court because Defendants maintain facilities and business operations in this County, and all of the events giving rise to this action occurred in this County.

## V.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

29.     Plaintiff timely filed charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Washington State Human Rights Commission. On October 2, 2018, the EEOC issued Plaintiff Notice of Right to Sue.

30.     Plaintiff timely filed complaint about violation of fair labor standard to United States Department of Labor and to Washington State Department of Labor and Industries. Both organisations referred to pursue justice in a civil lawsuit (letter of September 18, 2018).

31.     Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## VI.    FACTUAL ALLEGATIONS

32.     At all times material to this action, Churyumov was employed by Amazon as software engineer in Amazon's office in Seattle, Washington. Churyumov started working there on 06/26/2017.

33.     At all the time, direct supervisor of Churyumov was Uwais Khan. Khan is Asian.

34.     Khan supervised 5 people in total. All of them were Asian except of Churyumov. Churyumov is White Russian.

35.     At the first day of employment 06/26/2017, Churyumov had a lunch with Khan and 2 other team members. Khan said, he recently watched the movie about Russia. He asked Churyumov's opinion about this. Churyumov responded, he likes Russian people but he doesn't like Russian President. Khan said, he does not like answer of Churyumov.

36.    According to official Amazon's policy for new hires (software engineers onboarding), new hires are assigned with trainings and self-study for the first 3 months of employment. However, in the first month of employment, Khan asked Churyumov to stop trainings and to start working on projects.

37.    According to Amazon's policy, every engineer should make daily feedback about the manager in the Amazon's online system "Amazon Connect". In July of 2017, Churyumov left negative feedback about Khan 2 times. Immediately after that, Khan told to Churyumov to stop making feedback.

38.    07/21/2017 Churyumov asked HR whether feedback system "Amazon Connect" is anonymous or not. 07/31/2017 HR employee confirmed to Churyumov that Khan can easily know who made negative feedback. Since then, Churyumov never left any feedback about Khan in the system "Amazon Connect".

39.    In July 2017 Khan said to Churyumov, "you must work on weekends". Nobody else in the team including Khan himself was asked to work on weekends.

40.    In October of 2017 Khan assigned to Churyumov "SMART" goals. Nobody else in team was assigned with the same high-level "SMART" goals by Khan. Some of "SMART" goals were knowingly non-achievable.

41.    According to Amazon's official policy, software engineers are entitled for sponsorship with working immigration visa. In October of 2017, Churyumov asked Khan about proceeding with this visa. Khan said, "you came to US to get asylum from Russia, thus you should not apply for this visa". Churyumov said, these 2 things should not be correlated. Churyumov asked, what is the visa status of Khan. Khan responded, that he applied for the same working visa. But for people from India the process "will take indefinite period of time". At the same time, for people from Russia immigration working visa process is very fast. Then Khan said, "You should wait at least until promotion in the next year. Until that time, you should not apply for visa". Nobody else in the team was denied with working visa.

42.    At the same time (October 2017), Khan asked HR, can he deny Churyumov's working visa. At that time, Churyumov successfully completed all of the projects. He received only appreciation for his job. No performance issues were reported by Khan to Churyumov by that time.

43.    Churyumov asked Khan to share his HR question with Churyumov. Khan refused. Khan said, he asked HR about "what the process of working visas is about". However, Khan was already 100% familiar with the process because he already got the working visa for himself.

44.    HR referred Khan to the legal team. Khan told to Churyumov, "legal team prohibited him to proceed with working visa". Then Churyumov himself

contacted legal team. Legal team confirmed to Churyumov, Khan's words are not true.

45.     According to Amazon's official policy, every engineer is entitled with the right to seek internal transfer in another department/location within the company. In October of 2017 Churyumov initiated internal transfer to NY office of Amazon. Khan told to Churyumov, "you can move to NY only when your wife finds a job there". Churyumov believed to Khan and postponed move to NY. Churyumov's wife started actively seeking job in NY. She spent 3 months for that active search. In January of 2018, Churyumov's wife found job in NY and family started moving. Immediately after that, Khan changed his mind and prohibited Churyumov to follow his wife and move to NY. Churyumov's wife was already in NY.

46.     Since January of 2018, without his wife Churyumov became single father taking care of disabled child. Churyumov's wife was not able to take disabled child to NY and to take care about her because she already took the second child to NY. New parental duties of Churyumov were to bring child to therapy, to spend more time with her, to pick her up from day care center etc. In addition to that, Churyumov's family incurred additional expenses: renting 2 residences in 2 separate states (NY and WA), paying for daycare instead of nanny for both children, etc.

47.     According to Amazon's policy, every engineer has a right to work from home upon reasonable need, for example once a week. All the team members including Khan worked from home in average once a week. In January of 2018, Churyumov asked Khan to work from home once a week because he needed to take care for child when day care center did not work and to bring her to doctors. Khan prohibited to Churyumov to work from home once a week. Nobody else in the team was ever prohibited to work from home. Khan said, Churyumov can work better if he will stay in the office more and talk to senior colleagues. Churyumov asked, does Khan have serious concerns about his performance? Khan responded, "I have no serious concerns about your performance, you will not be placed on pivot (termination procedure)". Numerous times Churyumov was in the office alone all the day when everybody else worked from home.

48.     In February of 2018, due to doctors and day care working hours, Churyumov asked Khan to allow him to end working half an hour earlier (4:30 pm) than other team members (5 pm). Khan responded, Churyumov can do this only if he will come to work 4 hours earlier (7 am) than others (11 am). Churyumov said, child has a disability and needs treatment. Churyumov is single parent, only he can bring child to therapy in the morning. Khan did not change his mind. All the other team members worked in the office in average 11 am - 5 pm. All the other team

members were always allowed to miss some hours of work if their children were sick. No one in the team except of Churyumov had child with disability. Every time Churyumov came to the office early, he was there alone.

49.     In spring of 2018, while asking Churyumov to start working at 7 am, Khan often asked Churyumov to participate in calls at 9-10 pm with foreign team from Asia or on weekends (due to time zone differences between Amazon teams from another countries). At the same time, Khan told, that he is not able to participate in these calls because next day "he has a family time". Churyumov needed to wake up at 5 am to do daily routine for child, bring her to daycare and be early at work. Churyumov can go to bed only at 11 pm because of calls with foreign team. This made his time for sleep at night 6 hours instead of 8 hours. Also, Churyumov still worked on weekends as Khan requested. Nobody else in the team was assigned with such work schedule.

50.     While Khan prevented Churyumov to take care for his child, in March of 2018 Khan took 1-month leave to take care for his own child.

51.     05/04/2018 Churyumov's child became seriously sick. Khan was out of office on a leave. Churyumov took 1 day leave and informed remaining team. Online system automatically notified Khan about the leave and reason for that (child's sickness). When Khan came back to the office, he disciplined Churyumov for that leave. All the other team members including Khan took many days off throughout the year when they were sick or when their children were sick. They were never disciplined for these days off.

52.     In April of 2018, child's condition did not improve. Churyumov could not provide much treatment to child and spend more time with her. To spend more time with the child, Churyumov started bringing the child to work. Khan prohibited Churyumov to bring the child to work. Half of team members had children. Nobody of them was prohibited to bring children to work. Amazon policy allows employees to bring even dogs to work every day.

53.     Later in 2018, Amazon organized "Friday for children" holiday. Every employee could bring his children to work. Employees did not work because they entertained families and children at the Amazon's facilities: food, games, music etc. Earlier (April 2018) Khan prohibited Churyumov to bring child to work. Churyumov was the only team member having child who did not bring it on holiday. While team members with families entertained, Churyumov worked. At that day, Khan also came to work with his family and had fun.

54.     In April of 2018, Churyumov got nice yearly performance review in the Amazon "Forte" review system. Senior engineers confirmed achievements of Churyumov. Churyumov made the highest number of innovations among the team members. Churyumov completed most of the "SMART" goals assigned to him by

Khan. Churyumov's position was junior engineer. Most of other team members were senior engineers.

55.     Based on performance reviews, other team members got salary increase. Khan made salary of Churyumov the same as in previous year.

56.     In spring of 2018, Churyumov was assigned with the "feature migration" task. Churyumov told to Khan, that other team members are doing more interesting work. "Feature migration" is the less preferable task for an engineer because it requires no creativity, looks more like accounting but not engineering etc. Khan ensured Churyumov that immediately after completion of this task he will assign to Churyumov more interesting task. However, after the task completion, Khan assigned to Churyumov another task of the same type ("feature migration").

57.     05/08/2018 Khan asked Churyumov to quit the company. Khan said, "You came to US for asylum from Russia. With this status you might find something better with another employer. I ask you to quit the company".

58.     Amazon has policies against discrimination. Later on the same day 05/08/2018 Churyumov complained to HR about violation of these policies and violation of the law. HR specialist Edwin Mwango started investigation.

59.     05/22/2018 Mwango ended investigation. Mwango confirmed most of Churyumov's statements: Khan never treated other team members like Churyumov. Mwango admitted it is not proper for Khan to coerce Churyumov to resign. However, Mwango concluded there should be no sanctions to Khan.

60.     Soon after investigation (May-June 2018), team members got emails with announcement of promotion of Khan.

61.     In June of 2018, Mwango asked Khan to start procedure for termination of Churyumov. He asked Khan to place Churyumov on the "coaching plan". This is the 1-month plan resulting in the "pivot" procedure. Pivot is the termination procedure in Amazon.

62.     At the same time, Mwango ensured Churyumov that "Khan will not retaliate". Mwango said, Andrew Berg is appointed now as Churyumov's HR. Mwango ensured, "Berg is my best friend, Berg will ensure, there will not be any retaliation. You are in good hands".

63.     06/12/2018, Khan started procedure for termination of Churyumov. He placed Churyumov on the coaching plan. Coaching plan included written intent to place Churyumov on pivot.

64.     Amazon has policies against retaliation. Churyumov complained to Berg and Mwango about retaliation. However, both of them approved Khan's actions.

65.     During the coaching plan, Churyumov gathered multiple references

from other senior engineers from other departments testifying that Khan's plan is not reasonable and Churyumov raises the bar of performance. Also, Churyumov successfully performed most of the coaching plan tasks. Churyumov forwarded this information to Berg multiple times. Berg did not react.

66.    In June of 2018, Churyumov reminded to Khan that Amazon policy gives a right to every engineer for internal transfer. Khan said, Churyumov is free for internal transfer. Few managers from other departments were ready to proceed with his transfer process. However, they said that in fact Khan blocked the transfer process.

67.    07/01/2018 Churyumov told to Mwango, that his investigation was not fair. Mwango did not investigate many crucial questions. For example, another HR employee before Mwango confirmed to Churyumov that in fact results of feedback about the manager are not anonymous. Thus, Khan can easily know that Churyumov made negative feedback about him. Mwango responded, "I say feedback is anonymous and this HR employee is terminated".

68.    At that time, CEO of Amazon was Jeff Bezos. Bezos implemented policy stating "Our tolerance to such lack of empathy should be zero". This was his response to widely cited New York Times article about discrimination of employees in Amazon based on their association with disabled relatives. Bezos asked every engineer to complain to him personally about such issues. 07/04/2018 Churyumov sent complaint to Bezos. Bezos never responded.

69.    07/16/2018 Khan placed Churyumov on the "Pivot" program. Pivot is the termination procedure in Amazon. This program offered to Churyumov to quit Amazon voluntary.

70.    Amazon Code of Conduct requires to report situation of retaliation to the next manager of immediate manager. 07/19/2018 Churyumov sent complaint to supervisor of Khan, Joe Resudek and to supervisor of Resudek, Robin Mendelson. However, Resudek approved pivot. Mendelson forwarded complaint back to Mwango and Berg.

71.    Later in July of 2018 Berg referred Churyumov to HR Annalisa Perez. She should be responsible for proceeding Churyumov to the last step of the "Pivot" program: "appeal". "Appeal" is the last speech before termination. Perez prohibited Churyumov to tell at "appeal" anything about discrimination, retaliation and previous complaints about Khan.

72.    07/25/2018 Churyumov came to the meeting with Berg and Khan to discuss Pivot program. When Churyumov told about unfairness, Berg and Khan openly laughed at him. Churyumov could not sustain with such insult. He immediately felt his PTSD physical symptoms in body and was not able to continue meeting.

73.     On the same day 07/25/2018, Churyumov was not able to do anything else because of PTSD. He felt himself worse like never before. Mental illness resulted in serious body symptoms. Amazon Employee Service Desk advised Churyumov to take leave. Churyumov took the leave on the same day.

74.     2 months later Churyumov was admitted to the hospital emergency room. He tried to commit suicide. Doctors qualified his medical condition for disability. Churyumov is still disabled. His child is still doing treatment to compensate health damages caused by Khan's actions.

75.     In autumn of 2018 the team needed to maintain capacity while Churyumov is on leave. Engineer from the neighbor team joined the team instead of Churyumov. He was Asian.

## VII.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

National Origin-Based Discrimination (Work terms and conditions) in Violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e-2(a)

76.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 75, above.

77.     Section 703 of Title VII, 42 U.S.C. § 2000e-2 (a)(1), provides that it shall be an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race or national origin.

78.     Khan discriminated against Churyumov in terms of compensation, terms, conditions and privileges of employment. In particular, Khan deprived Churyumov such work benefits as taking rest on weekends, making feedback about supervisor, working immigration visa, internal transfer, work from home, assigning different work than to others, flexible day schedule, leave when dependant is sick, compensation growth, threats of termination and other benefits. Nobody else in the team was deprived from any of these benefits.

79.     Khan asked Churyumov to quit. Nobody else in the team was terminated or moved to be terminated. By his actions, Khan coerced Churyumov to resign. Khan implemented environment for constructive discharge (Green v. Brennan, No. 14-613 (May 23, 2016)).

80.     Churyumov was the only non-Asian engineer in the team. All the remaining team members including Khan were Asian. EEOC Instruction booklet (O.M.B. No. 3046-0007) provides definitions of the EEO-1 race and ethnicity categories as follows: … Asian (Not Hispanic or Latino) - A person having origins

in any of the original peoples of the Far East, Southeast Asia, or the Indian Subcontinent, including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam. If Khan and his subordinates are from different countries (for example, India and Pakistan), they are still of the same race and ethnicity (Asian).

81.    Discrimination actions started from the beginning of the employment. At the beginning of employment, Churyumov could not have any performance review because he did not complete any projects. That means discrimination was not caused by the performance.

82.    Most of Khan's concerns regarding Churyumov's performance were raised after Churyumov's complaint to HR. Churyumov got multiple appreciation references from other senior engineers, including yearly "Forte" performance review.

83.    Amazon did not establish punishment policies in a Khan's way. Thus, Khan could not rely on Amazon policies (contracts) when taking certain actions against Churyumov. For example, there is no Amazon policy saying that "engineer must work 18 hours a day + weekends and he cannot treat his child if for example he is punished". Khan started applying official Amazon disciplinary actions (pivot) only after Churyumov complained to HR. Khan never applied pivot before the complaint to HR. Khan abruptly changed his opinion about Churyumov's performance after complaint to HR. That means all repressive actions before complaint to HR were caused by discrimination but not performance.

84.    Even engineers from other Amazon teams with bad performance were never punished in a way of Khan's genocide: prohibiting to treat disabled child, work 18 hours a day, work 7 days a week, etc.

85.    Exhaustive direct and circumstantial evidence includes documents (emails etc).

86.    Less discriminatory alternatives existed to achieve Khan's business purposes.

87.    Khan intentionally inflicted emotional distress. Khan was aware about Churyumov's inhuman working schedule resulted from his actions. Khan intentionally separated Churyumov's family by committing fraud. Khan was aware about the child disability. Khan was aware about consequences of his actions (lack of medical treatment).

88.    As a direct, legal and proximate result of the discrimination, Churyumov has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

89.    After Khan prohibited Churyumov to follow his wife, Churyumov's family incurred additional expenses: renting 2 residences in 2 separate states (NY

and WA), paying for daycare instead of nanny for both children, etc.

90.     Due to significant distress Churyumov was diagnosed with new illness and became disabled.

91.     Khan's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Churyumov's right to be free from discrimination.

## SECOND CLAIM FOR RELIEF

National Origin-Based Discrimination (Training programs) in Violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e-2(d)

92.     Plaintiff incorporated by reference as if fully set forth herein the allegations contained in paragraph 36 above.

93.     Section 703 of Title VII, 42 U.S.C. § 2000e-2(d), provides: it shall be an unlawful employment practice for any employer to discriminate against any individual because of his race, color or national origin in admission to, or employment in, any program established to provide apprenticeship or other training.

94.     Khan discriminated against Churyumov, prohibited to Churyumov to continue trainings prescribed by Amazon plan.

95.     Khan's conduct was undertaken because of Plaintiff's race and national origin.

96.     Khan's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on national origin.

97.     Plaintiff suffered from emotional distress as a result of this discrimination.

## THIRD CLAIM FOR RELIEF

National Origin-Based Discrimination (Test scores) in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(l)

98.     Plaintiff incorporated by reference as if fully set forth herein the allegations contained in paragraph 40 above.

99.     Section 703 of Title VII, 42 U.S.C. § 2000e-2(l) provides it shall be an unlawful employment practice for a respondent, in connection with the selection or referral of candidates for promotion, to use different cutoff scores for, or otherwise alter the results of, employment related tests on the basis of race, color or national origin.

100.   Khan discriminated against Churyumov, assigned to him "SMART" goals different than to others. Nobody else in the team was assigned with the same high-level "SMART" goals by Khan. Khan evaluated results in a different way than for other team members.

101.   This Khan's action was in line with discrimination actions described in paragraphs 70-83 above.

102.   Khan's conduct was undertaken because of Churyumov's race and national origin.

103.   Khan's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Churyumov's right to be free from discrimination based on national origin.

104.   Churyumov suffered from emotional distress as a result of this discrimination.

## FOURTH CLAIM FOR RELIEF
Retaliation in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-3(a)

105.   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 58 through 75, above.

106.   Section 704(a) of Title VII of the Civil Rights Act of 1964, *as amended*, prohibits employers from discriminating against an employee because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000e-3(a).

107.   Churyumov made formal complaint to Amazon' agents and employees (HR Mwango) opposing Khans' unlawful, discriminatory employment practices.

108.   As a result of Churyumov's complaints, Khan took materially adverse actions against Churyumov, including, but not limited to, issuing disciplinary warnings, such as coaching plan, pivot program and threats of termination.

109.   Mwango' and Berg's duties as HR specialists were to prevent discrimination and retaliation. However, Mwango and Berg abused their discretion. They did not prevent Khan from discrimination. They helped Khan to retaliate. Bezos did not react.

110.   Defendants' retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

111.   As a direct, legal and proximate result of Khan's retaliation, Plaintiff

has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
Discrimination based on association with disabled in Violation of Americans with Disabilities Act 42 U.S. Code § 12112 (b)(4)

112.   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 46 through 57, above.

113.   42 U.S. Code § 12112 (a) provides: no covered entity shall discriminate against a qualified individual on the basis of disability in regard to … advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

114.   42 U.S. Code § 12112 (b)(4) provides: the term "discriminate against a qualified individual on the basis of disability" includes excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.

115.   The U.S. Equal Employment Opportunity Commission issued notice of 12/20/2017 "Questions and Answers About the Association Provision of the Americans with Disabilities Act". This provides: In addition to protecting qualified applicants and employees with disabilities from employment discrimination, one ADA provision the "association" provision -- protects applicants and employees from discrimination based on their relationship or association with an individual with a disability, whether or not the applicant or employee has a disability… An employer may not deny an employee any other benefits or privileges of employment that are available to others because of the disability of someone with whom the employee has a relationship or association… An employer must avoid treating an employee differently than other employees because of his or her association with a person with a disability.

116.   Churyumov's child was disabled. Khan was aware about that. Khan discriminated against Churyumov based on the association of Churyumov with disabled child. Khan did it in the most aggravating way: he prevented Churyumov from taking care about disabled child.

117.   Khan prohibited Churyumov to work from home, asked him to work more hours than others, punished for taking leave when child is sick, prohibited to bring the child to work.

118.   None of these actions were applied to any other team member having non-disabled children.

119.   Khan intentionally inflicted emotional distress. Khan was aware about

the child disability. Khan was aware about consequences of his actions (lack of medical treatment).

    120.   As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff's child disability was aggravated. Additional medical expenses were incurred.

## SIXTH CLAIM FOR RELIEF
Retaliation in Violation of
Americans with Disabilities Act 42 U.S.C. § 12203(a)

    121.   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 58 through 75, above.

    122.   Americans with Disabilities Act , 42 U.S.C. § 12203(a) provides no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

    123.   Churyumov made formal complaint to Amazon' agents and employees (HR Mwango) opposing Khans' unlawful, discriminatory employment practices based on association of Churyumov with his disabled child.

    124.   As a result of Churyumov's complaint, Khan took materially adverse actions against Plaintiff, including, but not limited to, issuing disciplinary warnings, such as coaching plan, pivot program and threats of termination.

    125.   Mwango' and Berg's duties as HR specialists were to prevent discrimination and retaliation. However, Mwango and Berg abused their discretion. They did not prevent Khan from discrimination. They helped Khan to retaliate. Bezos did not react.

    126.   As a direct, legal and proximate result of Defendants' retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
Retaliation in Violation of
Family and Medical Leave Act 29 U.S. Code § 2615

    127.   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 51, 58 through 75, above.

    128.   29 U.S. Code § 2615 provides it shall be unlawful for any employer to

interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter. It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter; has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter.

129.   Churyumov took leave to take care for seriously sick family member (paragraph 45). Since condition of the child was serious, this leave is qualified for FMLA. 29 U.S. Code § 2612(a)(1)(C).

130.   Khan was aware about the leave. Amazon online leave system automatically notified Khan about the leave and the reason for that.

131.   Khan disciplined Churyumov for that leave.

132.   Churyumov made formal complaint to Amazon' agents and employees (HR Mwango) opposing Khans' unlawful employment practices, opposing punishment for this sick leave.

133.   As a result of Churyumov's complaints, Amazon's employee (Khan) took materially adverse actions against Churyumov, including, but not limited to, issuing disciplinary warnings, such as coaching plan, pivot program and threats of termination.

134.   Mwango' and Berg's duties as HR specialists were to prevent discrimination and retaliation. However, Mwango and Berg abused their discretion. They did not prevent Khan from discrimination. They helped Khan to retaliate. Bezos did not react.

135.   As a direct, legal and proximate result of Khan's retaliation, Churyumov has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

## EIGHTH  CLAIM FOR RELIEF
### National Origin-Based Discrimination in Violation of
### RCW 49.60.180(3)

136.   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 75, above.

137.   This Khan's action was in line with discrimination actions described in paragraphs 76-91 above.

138.   RCW 49.60.030(1)(a) establishes the right to be free from

discrimination because of race, color, national origin is recognized as and declared to be a civil right. This right shall include, but not be limited to the right to obtain and hold employment without discrimination.

139.   RCW 49.60.180(3) makes an unfair practice for any employer to discriminate against any person in compensation or in other terms or conditions of employment because of race, color, national origin.

140.   Khan discriminated against Churyumov in terms of compensation, terms, conditions and privileges of employment. In particular, Khan deprived Churyumov such work benefits as taking rest on weekends, making feedback about supervisor, working immigration visa, internal transfer, work from home, flexible day schedule, leave when dependant is sick, compensation growth and other benefits. Nobody else in the team was deprived from any of these benefits.

141.   Khan attempted to terminate Churyumov. Nobody else in the team was terminated or moved to be terminated.

142.   Churyumov was the only non-Asian engineer in the team. All the remaining team members including Khan were Asian. EEOC Instruction booklet (O.M.B. No. 3046-0007) provides definitions of the EEO-1 race and ethnicity categories as follows: … Asian (Not Hispanic or Latino) - A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian Subcontinent, including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam.

143.   Most of Khan's concerns regarding Churyumov's performance were raised after Churyumov's complaint to HR. Churyumov got multiple appreciation references from other senior engineers, including yearly "Forte" performance review.

144.   Exhaustive direct and circumstantial evidence includes documents (emails etc).

145.   Less discriminatory alternatives existed to achieve Khan's business purposes.

146.   Khan intentionally inflicted emotional distress. Khan was aware about Churyumov's inhuman working schedule resulted from his actions. Khan intentionally separated Churyumov's family by committing fraud. Khan was aware about the child disability. Khan was aware about consequences of his actions (lack of medical treatment).

147.   As a direct, legal and proximate result of the discrimination, Churyumov has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

148.   Khan's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Churyumov's right to be free from discrimination.

## NINTH CLAIM FOR RELIEF
Retaliation in Violation of
RCW 49.60.210(1)

149.   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 58 through 75, above.

150.   RCW 49.60.210(1) provides it is an unfair practice for any employer or other person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.

151.   Plaintiff made formal complaint to Amazon' agents and employees (HR Mwango) opposing Khans' unlawful, discriminatory employment practices.

152.   As a result of Plaintiff's complaints, Defendants' agent and employee (Khan) took materially adverse actions against Plaintiff, including, but not limited to, issuing disciplinary warnings, such as coaching plan, pivot program and threats of termination.

153.   Mwango' and Berg's duties as HR specialists were to prevent discrimination and retaliation. However, Mwango and Berg abused their discretion. They did not prevent Khan from discrimination. They helped Khan to retaliate. Bezos did not react.

154.   As a direct, legal and proximate result of Khan's retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

## TENTH CLAIM FOR RELIEF
Inhuman conditions of employment in Violation of
RCW 49.12.020

155.   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 39 and 49 above.

156.   RCW 49.12.020 makes it unlawful for an employer to employ any person in any industry or occupation within the state of Washington under conditions of labor detrimental to their health.

157.   Khan established inhuman work schedule for Churyumov. Churyumov needed to work 7 days a week and for many days 18 hours a day. He was not able to work from home when he was sick. He was not able to always attend doctor for himself and for his child.

158.   Less discriminatory alternatives existed to achieve Khan's stated

business purposes.

159.    Khan intentionally inflicted emotional distress. Khan was aware about Churyumov's inhuman working schedule resulted from his actions.

160.    Churyumov became disabled. As a direct, legal and proximate result of the discrimination, Churyumov sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiffs have suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

161.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiffs' right to be free from unlawful conditions of employment.

## ELEVENTH CLAIM FOR RELIEF
### Retaliation in Violation of
### RCW 49.12.130

162.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 58 through 75, above.

163.    RCW 49.12.130 provides any employer who discharges, or in any other manner discriminates against any employee because such employee has testified or is about to testify, or because such employer believes that said employee may testify in any investigation or proceedings relative to the enforcement of RCW 49.12.010 through 49.12.180, shall be deemed guilty of a misdemeanor and upon conviction thereof, shall be punished by a fine of from twenty-five dollars to one hundred dollars for each such misdemeanor.

164.    Plaintiff made formal complaint to Amazon' agents and employees (HR Mwango) opposing unlawful inhuman employment conditions (RCW 49.12.020).

165.    As a result of Plaintiff's complaints, Khan took materially adverse actions against Plaintiff, including, but not limited to, issuing disciplinary warnings, such as coaching plan, pivot program and threats of termination.

166.    Mwango' and Berg's duties as HR specialists were to prevent discrimination and retaliation. However, Mwango and Berg abused their discretion. They did not prevent Khan from discrimination. They helped Khan to retaliate. Bezos did not react.

167.    As a direct, legal and proximate result of Defendants' retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

## TWELVE CLAIM FOR RELIEF
### Retaliation for sick leave in Violation of
### RCW 49.12.287

168.   Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 51, 58 through 75, above.

169.   RCW 49.12.270(1) provides if, under the terms of a collective bargaining agreement or employer policy applicable to an employee, the employee is entitled to sick leave or other paid time off, then an employer shall allow an employee to use any or all of the employee's choice of sick leave or other paid time off to care for a child of the employee with a health condition that requires treatment or supervision.

170.   RCW 49.12.287 provides: an employer shall not discharge, threaten to discharge, demote, suspend, discipline, or otherwise discriminate against an employee because the employee has exercised, or attempted to exercise, any right provided under RCW 49.12.270 through 49.12.295; or has filed a complaint, testified, or assisted in any proceeding under RCW 49.12.270 through 49.12.295.

171.   Churyumov took leave to take care for seriously sick family member (paragraph 45) under RCW 49.12.270.

172.   Khan disciplined Churyumov for that leave.

173.   Churyumov made formal complaint to Amazon' agents and employees (HR Mwango) opposing Khans' unlawful employment practices, opposing punishment for this sick leave.

174.   As a result of Churyumov's complaints, Amazon's employee (Khan) took materially adverse actions against Churyumov, including, but not limited to, issuing disciplinary warnings, such as coaching plan, pivot program and threats of termination.

175.   Mwango' and Berg's duties as HR specialists were to prevent discrimination and retaliation. However, Mwango and Berg abused their discretion. They did not prevent Khan from discrimination. They helped Khan to retaliate. Bezos did not react.

176.   As a direct, legal and proximate result of Defendants' retaliation, Churyumov has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial. Churyumov became disabled, his income significantly decreased.

## THIRTEENTH CLAIM FOR RELIEF
### Violations of Implied Contract

177.   Plaintiff incorporates by reference as if fully set forth herein allegations contained in paragraphs 1 through 75, above.

178.   According to his job offer, Churyumov is employed by Amazon on the basis of "at will" employment.

179.   However, "at will" employment does not excuse unlawful actions of the employer. In Burnside v. Simpson Paper Company (123 Wn.2d 93 (1994) 864 P.2d 937), the Washington State Supreme Court  held that the company created an implied contract, even though that may not have been management's intent.

180.   Khan asked Churyumov's wife to move to NY and to find job there. Khan promised to Churyumov internal transfer as soon as his wife finds a job in NY. Khan violated his promise. This breach of promise resulted in separation of Churyumov's family, significant economical and emotional damages.

181.   In June of 2018 Churyumov reminded to Khan that Amazon policy gives a right to every engineer for internal transfer. Khan said, Churyumov is free for internal transfer. Few managers from other departments were ready to proceed with his transfer process. However, they said that in fact Khan blocked the transfer process.

182.   Amazon established policies against workplace harassment, discrimination and retaliation. Also Amazon established policies about benefits for employees (work from home, paid leave to take care for sick family member etc). Amazon made every engineer and supervisor aware about this policies. Both Khan and Churyumov knew about these policies. Khan abused his discretion and violated all of these policies.

183.   Mwango and Berg violated Amazon policies against retaliation. As HRs, their role is to prevent discrimination and retaliation. Instead, they supported unlawful actions.

184.   Khan ensured Churyumov: "I have no serious concerns about your performance, you will not be placed on pivot". After complaint to HR, Khan placed Churyumov on pivot termination procedure.

185.   Khan ensured Churyumov that immediately after completion of less interesting task he will assign to Churyumov more interesting task. However, after the task completion, Khan assigned to Churyumov another task of the same type ("feature migration").

186.   In his investigation, Mwango ensured Churyumov that he will not be retaliated. Immediately after investigation, Mwango and Khan started retaliation.

187.   Bezos in his email to all the engineers established "zero tolerance to such lack of empathy" in response to accusations in discrimination based on disability and association with disabled. Churyumov complained to Bezos about

such discrimination and retaliation. Bezos did not react.

188.   As a direct, legal and proximate result of Defendants' actions, Churyumov has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial. Churyumov became disabled, his income significantly decreased.

## DECLARATORY RELIEF ALLEGATIONS

189.   A present and actual controversy exists between Plaintiff and Defendants concerning their rights and respective duties. Plaintiff contends that Defendants violated his rights under Title VII of the Civil Rights Act of 1964; Americans with Disabilities Act of 1990; Family and Medical Leave Act of 1993; 49.60 RCW Discrimination; 49.12 RCW Industrial Welfare. Plaintiff is informed and believes and thereon alleges that the Defendants deny these allegations. Declaratory relief is therefore necessary and appropriate.

190.   Plaintiff seeks a judicial declaration of the rights and duties of the respective parties.

## INJUNCTIVE RELIEF ALLEGATIONS

191.   No plain, adequate, or complete remedy at law is available to Plaintiff to redress the wrongs addressed herein.

192.   If this Court does not grant the injunctive relief sought herein, Plaintiff will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

193.   For an order enjoining Defendants from engaging in the unlawful acts complained of herein; cancelling "pivot program"; allowing Churyumov to transfer to another department as per Amazon policy;

194.   For a declaration that Defendants actions are unlawful;

195.   For ordering Amazon to create policies against discrimination based on association with disabled; against punishment of employees for taking leave to take care for children; against unlawful hiding information on the "pivot appeal" procedure; against participation of HR employees in retaliation. Plaintiff prays also to order Amazon to inform all employees in US offices about these policies and provide compulsory training to management of all levels.

196.   For reinstatement (cancelling "pivot" program);

197.   For lost wages and all other compensation denied or lost to Plaintiff by reason of Defendants' unlawful actions, in an amount to be proven at trial;

198.   For medical expenses of Plaintiff and his family;

199.   For compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

200.   For liquidated damages;

201.   For punitive damages in an amount to be determined at trial;

202.   For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

203.   For costs of suit (RCW 49.60.030(2));

204.   For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

205.   Plaintiff demands a jury trial on all causes of action and claims to which they have a right to a jury trial.

Dated:  Dec 27, 2018                    Respectfully submitted,
                                        By: Oleg Churyumov

_____