UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| OLEG CHURYUMOV, | CASE NO. C19-136RSM |
|---|---|
| Plaintiff, | ORDER ON PENDING MOTIONS |
| v. | |
| AMAZON CORPORATE LLC, et al., | |
| Defendants. | |

## I.      INTRODUCTION

Plaintiff's action arises from his employment with Defendant Amazon Corporate, LLC ("Amazon").  Plaintiff, proceeding pro se, filed this action in Washington state court asserting a variety of employment claims against Amazon, his supervisors, members of the Amazon's Human Resources team, and Amazon's CEO, Jeff Bezos (collectively, "Defendants" and without Amazon, the "Individual Defendants").  Dkt. #1-2.  Defendants removed the action to this Court. Dkt. #1.  The parties filed numerous motions before requesting that the Court assist by way of settlement conference.  Dkt. #43.  After the settlement conference proved unsuccessful, the Court renoted the numerous pending motions for consideration.  Dkt. #51.  The Court now resolves the pending motions.

## II. BACKGROUND[1]

### A. Factual Background

Plaintiff Oleg Churyumov began working as a software engineer in Amazon's Seattle offices in June 2017. Dkt. #1-2 at ¶ 12. Plaintiff indicates that he was born in Russia and identifies as "White Russian." *Id.* Defendant Uwais Khan ("Khan"), who Plaintiff identifies as Asian, supervised Plaintiff and Plaintiff's four teammates, all of whom Plaintiff also identifies as Asian. *Id.* at ¶¶ 33–34. Plaintiff indicates that things got off to a bad start from the beginning when, at lunch on his first day, Khan commented on a movie he had seen about Russia and did not like Plaintiff's response that "he likes Russian people but he doesn't like Russian President." *Id.* at ¶ 35. Things worsened after Plaintiff left negative feedback about Khan that he believed was confidential, but which was easily accessed by Khan. *Id.* at ¶¶ 37–38.

Plaintiff points to an extensive list of actions he believes were unfair. Despite Amazon's policy of providing new engineers three months of training and self-study, Khan forced Plaintiff to start working on projects early. *Id.* at ¶ 36. Khan forced Plaintiff to work on weekends while his other teammates were not required to. *Id.* at ¶ 39. Khan tasked Plaintiff, alone, with meeting goals that Khan knew were "non-achievable." *Id.* at ¶ 40. Khan actively dissuaded Plaintiff from seeking a working visa. *Id.* at ¶¶ 41–44. Plaintiff initiated an internal transfer to New York but was informed by Khan that he needed to wait until his wife found a job in New York. *Id.* at ¶ 45. After Plaintiff's wife found a job and relocated to New York, Khan refused to allow Plaintiff to transfer. *Id.* at ¶ 46. This resulted in Plaintiff's family being split—his disabled daughter remained with him in Seattle and his wife and second child moved to New York. *Id.*

---

[1] The Court cites to the record by the docket numbers and pagination applied by the Court's CM/ECF system. Where the nature of the document permits the Court to appropriately and clearly cite to numbered paragraphs or page and line numbers, the Court does so.

Needing additional flexibility to care for his disabled child, Plaintiff sought to work from home at least one day a week—in accordance with Amazon policy and as Plaintiff's teammates and Khan were permitted to do—but Khan would not agree to let Plaintiff work from home. *Id.* at ¶ 47. Plaintiff instead sought to alter his working hours, so he could leave a half hour earlier than his other teammates generally did, but Khan would only allow him to do so if he came into the office four hours earlier than his teammates did. *Id.* at ¶ 48. Plaintiff apparently did so, but Khan continued to require Plaintiff to work off hours and weekends to coordinate with international teams. *Id.* Despite the increased hours and decreased sleep, Khan still had Plaintiff work on the weekends. *Id.*

Khan also treated Plaintiff differently than he did Plaintiff's other teammates with children. Khan did not allow Plaintiff to miss work to care for his daughter even though others could miss work to care for their sick child. *Id.* Khan himself took a month-long leave of absence to care for his own child. *Id.* at ¶ 50. On one occasion, while Khan was not at work, Plaintiff took leave for one day to care for his sick daughter. *Id.* at ¶ 51. Upon returning, Khan disciplined Plaintiff despite not disciplining teammates for taking days off to care for sick children. *Id.* With limited options, Plaintiff began bringing his sick daughter to work until Khan told him to stop. *Id.* at ¶ 52. When Amazon held a special event allowing employees to bring their children to work, Khan prohibited Plaintiff from doing so despite bringing his own family and allowing Plaintiff's teammates to bring their children. *Id.* at ¶ 53.

Nonetheless, Plaintiff continued to perform well for Amazon. He received positive performance reviews and completed most of the goals set for him. *Id.* at ¶ 54. But Khan still did not award Plaintiff a raise even though he was already paid less than his teammates. *Id.* at ¶ 55. Instead, Khan assigned Plaintiff more remedial and unattractive projects. *Id.* at ¶ 56.

On May 8, 2018, Khan asked Plaintiff to quit working for Amazon. *Id.* at ¶ 57. Plaintiff pursued the issue with human resources, but Khan faced no discipline even though the investigation revealed that Khan treated Plaintiff differently than the other teammates and attempted to coerce Plaintiff into quitting. *Id.* at ¶ 59. Instead, Amazon promoted Khan and began the process of terminating Plaintiff's employment, placing him on a "coaching plan." *Id.* at ¶¶ 60–61. Plaintiff, and other software engineers, found many of the coaching plan's requirements to be unreasonable, yet Plaintiff successfully completed many. *Id.* at ¶ 65. Plaintiff again sought an internal transfer and found opportunities to do so, but "Khan blocked the transfer process" and went forward with termination. *Id.* at ¶¶ 66–67, 69. Even though Plaintiff raised his belief that the termination was discriminatory, Amazon went forward with the termination process, though it seems Plaintiff is still technically employed. *Id.* at ¶¶ 70–71.

The discrimination and termination process had profound impacts on Plaintiff and his mental illness, forcing him to take leave from Amazon. *Id.* at ¶¶ 72–73. Plaintiff's condition deteriorated and he was admitted to the hospital after attempting suicide. *Id.* at ¶ 74. Plaintiff's doctors ultimately determined him to be disabled. *Id.*

## B. Procedural Background

By letter dated July 18, 2018, Defendants were given Notice of Charge of Discrimination, related to Plaintiff, from the U.S. Equal Employment Opportunity Commission ("EEOC"). Dkt. #9-1 at 2. That Notice indicated only that the discrimination charge was brought under the ADA, indicated June 10, 2018, as a relevant date, and indicated that "[a] perfected charge (EEOC Form 5) will be mailed to you once it has been received from the Charging Party." *Id.* On October 2, 2018, the EEOC issued a Dismissal and Notice of Rights to Plaintiff and provided Amazon a copy. Dkt. #1-2 at ¶ 29; Dkt. #9-1 at 7.

On December 28, 2018, Plaintiff, asserting a variety of discrimination charges, filed his Complaint in the Superior Court of the State of Washington for King County. Dkt. #1-2. Plaintiff served Amazon a copy of the summons and Complaint by mail on January 11, 2019. Dkt. #1 at ¶ 2; Dkt. #26-1. On January 30, 2019, Defendants removed the action to this Court because Plaintiff asserted federal claims on the face of his Complaint. Dkt. #1.

In lieu of filing an Answer, Defendants filed a Partial Motion to Dismiss, seeking dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(5) for insufficient service of process on the individual defendants, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted on multiple claims. Dkt. #8. Shortly thereafter, Plaintiff filed a Motion to Remand seeking to return the action to state court. Dkt. #14. Also pending before the Court are Plaintiff's Motion to Disqualify Opposing Counsel for Conflict of Interest (Dkt. #35), Plaintiff's Second Motion for Leave to Amend and Supplement Complaint (Dkt. #42), and Plaintiff's Motion to Stay Civil Action Pending Resolution of EEOC, NLRB and WSBA Proceedings (Dkt. #47).

## III. DISCUSSION

### A. Plaintiff's Motion to Disqualify Defense Counsel

Indicative of the overly hostile relationship between the parties, Plaintiff has sought to disqualify counsel for Defendants. Dkt. #35. Plaintiff alleges that conflicts of interest may arise between Defendants during this litigation and asks the Court to wade into Defendants' attorney-client relationships and Amazon's governance of its internal business affairs. *Id.* The Court will not.

Disqualification is considered "a drastic measure which courts should hesitate to impose except when absolutely necessary." *United States ex rel. Lord Elec. Co., Inc. v. Titan Pac. Constr. Corp.*, 637 F. Supp. 1556, 1562 (W.D. Wash. 1986) (citing *Freeman v. Chicago Musical*

*Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)); *see also Venable v. Keever*, 960 F. Supp. 110, 113 (N.D. Tex. 1997) ("Depriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration"). Disqualification motions are therefore subject to "particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985).

"In determining whether an attorney's representation of a particular client violates the attorney's ethical responsibilities, the Court first refers to the local rules regulating the conduct of members of its bar." *Lord Elec. Co., Inc.*, 637 F. Supp. at 1560. By local rule, this Court requires the attorneys appearing before it to know and comply with the local rules, Washington's Rules of Professional Conduct, the Federal Rules of Civil Procedure, and the Court's general orders. LCR 83.3(a).

Plaintiff speculates as to possible violations of Washington Rule of Professional Conduct 1.7, which relates to concurrent conflicts of interest between an attorney's clients. RPC 1.7. As Defendants do, the Court notes that Plaintiff does not clarify why the matter is his concern— beyond strategy. Dkt. #40 at 6 (quoting *Burnett v. State Dep't of Corr.*, 187 Wash. App. 159, 170, 349 P.3d 42, 47 (2015) ("[T]he majority, if not universal, rule is that only a party who has been represented by the conflicted attorney has standing.")). Plaintiff does not allege that he is or has ever been a client of Defendants' counsel. Rather he alleges that conflicts may arise between Defendants in this case.

Plaintiff's allegations are entirely speculative. This is a proper consideration for defense counsel and their clients, the parties with the relevant knowledge. The Court has no reason to presume that defense counsel is not familiar and complying with their ethical obligations. As Plaintiff himself asserts, defense counsel may be required to bring the issue to this Court's attention should an actual conflict arise. Dkt. #35 at 3. The Court will not remove counsel based

on speculative ethics violations and Plaintiff fails to show a glaring, open, or obvious conflict such that the Court has a duty to act. *See In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976).

## B. Plaintiff's Motion to Remand

Plaintiff originally filed this action in King County Superior Court. Objecting to Defendants' removal of the matter to this Court, Plaintiff seeks remand. Dkt. #14.

### 1. Legal Standard

When a case is filed in state court, removal is typically proper if the complaint raises a federal question or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a). Typically, the court presumes "that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quotation marks omitted); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."). Courts "strictly construe the removal statute against removal jurisdiction." *Gaus*, 980 F.2d at 566. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred because of the removal. *Id.* "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

### 2. This Matter Was Properly Removed

The Court has little problem in determining that the case should not be returned to state court. "The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint' rule, which provides that federal question jurisdiction exists only when a federal

question is presented on the face of the plaintiff's properly pleaded complaint." *California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States*, 215 F.3d 1005, 1014 (9th Cir. 2000). Plaintiff's Complaint clearly pleads claims based on federal statutes. Dkt. #1-2. Plaintiff also previously sought to amend his Complaint, asserting his previous federal claims and adding at least one additional federal claim. Dkt. #24-1. Lastly, Plaintiff has a pending motion for leave to file an amended complaint that continues to assert federal claims. Dkt. #42.

Plaintiff advances several creative arguments for why removal is not proper here. *See generally*, Dkt. #14. But Defendants arduously detail why Plaintiff's arguments are out of step with existing law. *See generally*, Dkt. #25. Plaintiff's arguments in reply[2] fair no better, with each ultimately failing.[3] For the reasons set forth by Defendants, Plaintiff's attempt to have this action remanded to state court is denied.

---

[2] The Court notes that Plaintiff's reply is not in accordance with the Court's local rules. Dkt. #27. Plaintiff's reply is 12 single-spaced pages. Local Civil Rule 7(e)(3) limits Plaintiff's reply to 12 pages, but Local Civil Rule 10(e)(1) required that Plaintiff's reply "be double spaced or exactly 24 points." Pursuant to Local Civil Rule 7(e)(6), "[t]he court may refuse to consider any text, including footnotes, which is not included within the page limits." The Court will accordingly consider the first six pages of Plaintiff's reply. Regardless, Plaintiff's arguments lack legal merit and do not rebut the arguments made by Defendants in their response.

[3] Plaintiff argues that his state law claims eliminate the possibility of removal. Dkt. #14 at 3–4. But this overlooks the Court's supplemental jurisdiction and Defendants point out that the law only requires that a federal claim be presented on the face of the Complaint at the time of removal. Dkt. #25 at 8–11. Plaintiff argues that he asserts breach of contract claims that are outside of the Court's supplemental jurisdiction. Dkt. #14 at 4. But Defendants point out that the claims fall within the Court's supplemental jurisdiction because they arise from the same set of facts. Dkt. #25 at 11–12. Plaintiff argues that Defendants have taken inconsistent positions by basing removal on Plaintiff's federal claims while arguing that those claims should be dismissed. Dkt. #14 at 4. But Defendants point out that the question of jurisdiction looks at the time the complaint was filed in state court and that the Court can exercise supplemental jurisdiction even if the federal claims are dismissed. Dkt. #25 at 16. Plaintiff argues that the Court should remand Plaintiff's state law claims because they predominate over his federal claims. Dkt. #14 at 5. The Court has "discretion to decline to exercise supplemental jurisdiction over state law claims" if the state law claims predominate over the federal claims, but the discretion "is informed by the *Gibbs* values 'of economy, convenience, fairness, and comity.'" *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (referencing *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)).

### C. Defendants' Partial Motion to Dismiss

Defendants' Partial Motion to Dismiss (Dkt. #8) sought dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), (5), and (6).  On reply, however, Defendants abandoned their request for relief under both Rule 12(b)(1)[4] and Rule 12(b)(5).[5]  The Court therefore addresses Plaintiff's claims under the legal standard for Rule 12(b)(6) motions.[6]

#### 1. Legal Standard

A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and must include sufficient facts to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (alteration in original) (citations omitted).  "Determining whether a complaint states a plausible claim for relief will . . .

---

Defendant further points out that Plaintiff's argument would result in remand only of the state law claims within the Court's supplemental jurisdiction, not the entire matter.  Dkt. #25 at 13. Plaintiff's procedural arguments also fail.  Plaintiff argues that Defendants' removal was deficient because it did not include the summons served on Defendants, did not convey his jury demand, and the notice did not contain a section explaining why this matter is appropriately removed to the Seattle Division of this Court.  Dkt. #14 at 6–7.  But Defendants challenge each of Plaintiff's procedural challenges on factual and legal grounds.  Dkt. #25 at 17–20.  The Court agrees that Plaintiff's procedural arguments do not provide a basis for remand.

[4] Defendants invoked Rule 12(b)(1) in arguing that the Court lacked subject matter jurisdiction over Plaintiff's Title VII and ADA claims for a failure to exhaust remedies but abandoned the argument on reply.  *See* Dkt. #31 at 12 ("Amazon withdraws its motion to dismiss Plaintiff's ADA and Title VII claims against Amazon for failure to exhaust administrative remedies" but "the individual defendants still maintain their motion to dismiss Plaintiff's ADA and Title VII claims.").

[5] Defendants invoked Rule 12(b)(5) in arguing that the Individual Defendants had not been properly served.  But on reply, Defendants indicated that Individual Defendants "agreed to waive service in this lawsuit and therefore withdraw their claim for insufficient service of process under 12(b)(5)."  Dkt. #31 at 2 n.2

[6] Plaintiff also filed a surreply following Defendants' reply.  Dkt. #24.  Plaintiff's surreply simply made further argument against the reply.  *Id.*  The Court does not consider Plaintiff's improper surreply.  *See* LCR 7(g)(2) (surreply "strictly limited to addressing the request to strike" and the court will not consider "[e]xtraneous argument or a surreply filed for any other reason").

be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citations omitted). Dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also* FED. R. CIV. P. 8(a)(2). Where the court is interpreting the "inartful pleadings of pro se litigants," however, the court is to hold the pleadings to a "less stringent standard than formal pleadings drafted by lawyers." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

In considering a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The Court need not accept "legal conclusion couched as a factual allegation" and a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."[7] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 557). Absent facial plausibility, a plaintiff's claims must be dismissed.

//

//

---

[7] Plaintiff argues for a more "liberal system of 'notice pleading.'" Dkt. #30 at 2. But Plaintiff relies on *Conley v. Gibson*, 355 U.S. 41 (1957), a case that was abrogated by the Supreme Court's more recent *Iqbal* and *Twombly* opinions.

ORDER – 10

### 2. Plaintiff's Title VII[8] and ADA[9] Claims

Plaintiff brings various claims for discrimination and retaliation under both Title VII and the ADA. Dkt. #1-2 at ¶¶ 76–126. Defendants seek dismissal of those claims as to Individual Defendants and the Court agrees. *See Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 588 (9th Cir. 1993) (Title VII "claims against the defendants in their individual capacities properly were dismissed for failure to state a claim"); *Walsh v. Nevada Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (Title VII's "bar on suits against individual defendants also applies to suits brought under Title I of the ADA"). Plaintiff's creative attempts to distinguish the clear legal authorities are not persuasive. Dkt. #30 at 8–10. Plaintiff's claims against Individual Defendants under both Title VII and the ADA are dismissed.

Where the Court dismisses for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Such is the case here as Plaintiff's Title VII and ADA claims against individuals are clearly precluded. Plaintiff may not replead the claims and they are dismissed with prejudice.

### 3. Plaintiff's FMLA[10] Claim

Plaintiff claims that Defendants unlawfully retaliated against him for exercising his rights under the Family and Medical Leave Act. Dkt. #1-2 at ¶¶ 127–35. Defendants argue that there is no individual liability under the FMLA and note that while the Ninth Circuit has not directly

---

[8] Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e to 2000e–17) ("Title VII").

[9] The Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12112 to 12117) ("ADA").

[10] The Family Medical Leave Act (29 U.S.C. §§ 2601–2654) ("FMLA").

addressed the question of individual liability under the FMLA, other circuit Courts of Appeal have rejected such claims. Dkt. #8 at 13–14 (citing *Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003); *Wascura v. Carver*, 169 F.3d 683, 684 (11th Cir. 1999)). Conversely, Plaintiff points to authority from the Third Circuit Court of Appeals finding that individual liability is possible under the FMLA. Dkt. #30 at 11 (citing *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 308, 414 (3d Cir. 2012)). But the Court does not ultimately need to address the issue here as Defendants otherwise demonstrate that Plaintiff's FMLA claims should be dismissed.

Defendants argue that Plaintiff's FMLA claims fail because he was not a qualified employee under FMLA. Dkt. #8 at 20–21 (citing 29 U.S.C. § 2611(2)(A) (to be eligible, employee must have been employed "for at least 12 months by the employer" and have "at least 1,250 hours of service with such employer during the previous 12-month period")). Specifically, Defendants note that Plaintiff claims he was hired in June 26, 2017, and complains of events occurring on and after May 4, 2018, and was not an eligible employee for FMLA purposes at that time. *Id.*

Plaintiff argues, with minimal support, that his eligibility should not matter. Dkt. #30 at 17–18. Plaintiff further argues that his claim for retaliation should not be premised on an underlying violation. *Id.* at 18. But Plaintiff fails to adequately support his arguments, especially in the light of Defendants' contrary authorities. Dkt. #31 at 7–9 (gathering cases highlighting necessity of FMLA eligibility to claim of retaliation and distinguishing cases relied upon by Plaintiff).

On the record, however, Defendants do not establish that amendment of Plaintiff's FMLA claims would be futile, especially considering Plaintiff's claims for continuing retaliation. Plaintiff's FMLA claims are dismissed with leave to amend.

### 4. Plaintiff's WLAD[11] Claims

Plaintiff additionally asserts discrimination and retaliation claims under Washington State law.  Defendants again seek dismissal as to claims against Individual Defendants.  The WLAD does provide for individual liability in the form of supervisory liability and aiding and abetting liability. *Rynning v. Graddy*, No. 16-5378RJB, 2018 WL 3917933, at *4–5 (W.D. Wash. Aug. 16, 2018) (noting that "individual supervisors, along with their employers, may be held liable for their discriminatory acts" and that the WLAD specifically provides for aiding and abetting liability).  But both types of individual liability are premised on affirmative acts.  *Id.* Defendants argue that Plaintiff's claims, as alleged, do not meet the necessary standards.

As to Plaintiff's claims against his direct supervisor, Khan, Defendants argue that Plaintiff has not adequately alleged that any claims of discrimination by Khan were due to Plaintiff's national origin. Dkt. #8 at 16.  But the Court finds that Defendants' position takes an overly narrow reading of Plaintiff's Complaint, especially at this stage of the proceedings.  The Court finds that Plaintiff alleges sufficient facts to support discrimination and retaliation claims against Khan.

As to the Individual Defendants other than Khan, Defendants argue that Plaintiff has not adequately established that certain of the Individual Defendants qualify as his "supervisor" or that any took affirmative actions upon which liability can lay.  *Id.* at 15–17.  Specifically, Defendants claim that any supervisory claims against Edwin Mwango, Andrew Berg, and Beth Galetti—all employees in human resources—must fail as Plaintiff does not establish that they were his supervisors or that they took any affirmative actions against him.  *Id.* As to Joe Resudek,

---

[11] The Washington Law Against Discrimination (Chapter 49.60 Wash. Rev. Code) ("WLAD").

Robin Mendelson, and Jeff Bezos, Defendants argue that Plaintiff does not establish sufficiently affirmative acts to support supervisory or aiding and abetting claims. *Id.*

The Court agrees that Plaintiff's allegations do not sufficiently allege individual liability against the Individual Defendants other than Khan.[12] Plaintiff's arguments to the contrary ultimately lack support and dismissal is appropriate on this record.[13] However, the Court cannot say that such claims are futile and dismisses with leave to amend the claims.

### 5. Plaintiff's Inhumane Conditions Claims

Plaintiff asserts a claim under Washington law alleging that he was forced to work under "conditions of labor detrimental to [his] health." Dkt. #1-2 at ¶¶ 155–61 (citing WASH. REV. CODE § 49.12.020). Plaintiff alleges specifically that his harm flows from the hours and schedule he was required to work. *Id.*

Defendants easily establish, and the Court agrees, that Plaintiff cannot bring such a claim against individual defendants not employing him. Dkt. #8 at 12–13 (citing WASH. REV. CODE § 49.12.005 (under Washington Industrial Welfare Act ("WIWA"), an "employer" must employ one or more employees). Plaintiff notes as much, and the Court is not persuaded by Plaintiff's

---

[12] Defendants lay out the applicable standards succinctly:

> *See Yousefi v. Delta Elec. Motors, Inc.*, No. C13-1632RSL, 2014 WL 4384068, at *3 (W.D. Wash. Sept. 4, 2014) (holding that "[m]ere knowledge of harassing or discriminatory behavior is not sufficient to create liability for aiding and abetting . . . [w]hat is required is proof that the defendant has engaged in actions for the purpose of encouraging or assisting another to discriminate"); *Brown v. Scott Paper Worldwide Co.*, [143 Wash.2d 349,] 20 P.3d 921, 927 (Wash. 2001) ("[s]upervisors are liable when they ***affirmatively*** engage in discriminatory conduct") (emphasis added).

Dkt. #31 at 5.

[13] For those claims asserted against Individual Defendants other than Khan.

ORDER – 14

conclusory argument that his manager should be treated as his "employer" and that it is "weird" that Washington has not provided for individual liability in this situation. Dkt. #30 at 10–11.

The Court similarly accepts Defendants' arguments that Plaintiff cannot adequately state a claim for relief under the WIWA as he cannot show that he is an individual entitled to the protections of that act. See Dkt. #8 at 21 (noting that Plaintiff's position made him ineligible for the protections of the WIWA); Dkt. #31 at 9 (same). These claims are dismissed with prejudice.

### 6. Plaintiff's Retaliation Claim Under RCW § 49.12.130

Plaintiff also alleges that Defendants violated a Washington law making it unlawful to discharge "or in any other manner discriminate[] against any employee because such employee has testified or is about to testify . . . in any investigation or proceedings relative to enforcement" of wage laws. Dkt. #1-2 at ¶¶ 162–67 (referencing Wash. Rev. Code § 49.12.139). But Plaintiff again fails to establish that he is entitled to the protections of the WIWA—as his position was otherwise exempt—and, still further, Defendants note that Plaintiff makes no allegation "that he ever testified in an investigation or proceedings" that would trigger protection. Dkt. #8 at 21–22; Dkt. #31 at 9–10. Plaintiff's claims do not fall within the scope of the statute he relies upon and are dismissed with prejudice.

### 7. Plaintiff's Retaliation for Use of Sick Leave Claim

Plaintiff claims that Defendants violated Washington law by retaliating against him for using accrued sick leave to care for his sick daughter. Dkt. #1-2 at ¶¶ 168–76 (referencing WASH. REV. CODE § 49.12.287). As the Court concluded above, Individual Defendants cannot be liable under the WIWA as they were not Plaintiff's employers. *Supra* Part C.5. Plaintiff's sick leave retaliation claims against Individual Defendants[14] are dismissed with prejudice.

---

[14] Defendants do not argue that Plaintiff's claim for sick leave retaliation against Amazon should be dismissed.

### 8. Plaintiff's Implied Contract Claims

Lastly, Defendants seek dismissal of Plaintiff's various claims for breach of implied contracts. Dkt. #1-2 at ¶¶ 177–88. The Court agrees with Defendants that Plaintiff's implied contract claims should fail to the extent they are asserted against Individual Defendants. Dkt. #8 at 14. Plaintiff has not made allegations demonstrating a possible implied contract with any of the Individual Defendants.

> Before a court can find the existence of an implied contract in fact, there must be an offer; there must be an acceptance; the acceptance must be in the terms of the offer; it must be communicated to the offeror; there must be a mutual intention to contract, . . . [and] there must be a meeting of the minds of the parties.

*Milone & Tucci, Inc. v. Bona Fide Builders, Inc.*, 49 Wash.2d 363, 368, 301 P.2d 759, 762 (1956) (citations omitted). The Court agrees that Plaintiff refers to promises or statements by the Individual Defendants, not agreements. *See* Dkt. #30 at 13–14 (setting forth statements Plaintiff relies upon). The Court dismisses Plaintiff's implied contract claims against the Individual Defendants[15] with prejudice.

### D. Plaintiff's Motion to Amend Complaint

Plaintiff seeks leave to both amend and supplement his Complaint pursuant to Federal Rule of Civil Procedure 15. Dkt. #42 at 3. Plaintiff wishes to add unknown "doe" defendants, but primarily seeks to supplement his Complaint to add allegations and claims related to Defendants' actions after he initiated this lawsuit. Plaintiff summarily alleges that since he has filed his lawsuits the Defendants have retaliated against him, have advocated violence against him, have interfered with his lawful attempts to unionize Amazon employees, have threatened to publish his "private immigration information," have used the police to harass him, and have

---

[15] Defendants do not seek dismissal of implied contract claims against Amazon.

ORDER – 16

threatened to surveil his family. *See id.* at 4–7. Based on these additional allegations, Plaintiff seeks to expand some of his existing claims and to add new claims for malicious harassment, defamation, preventing self-organizing and unionizing, intentional infliction of emotional distress, harassment, and tort claims for violations of criminal laws.[16] Dkt. #42-1 at ¶¶ 265–374. Because Plaintiff's additional claims and allegations are from conduct occurring after the Complaint was filed, the Court interprets Plaintiff's motion as a motion to supplement.

### 1. Legal Standard

Courts have broad discretion to allow supplemental pleadings under Federal Rule of Civil Procedure 15(d), with a primary goal of promoting judicial efficiency. *Yates v. Auto City 76*, 299 F.R.D. 611, 613 (N.D. Cal. 2013) (citing *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) and *Planned Parenthood v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997)). Rule 15(d) allows the Court to fully address a dispute and grant complete, or nearly complete, relief and "[i]ts use is therefore favored." *Volpe*, 858 F.2d at 473.

Some courts consider motions to supplement under Rule 15(a)'s liberal standard for motions to amend. *Yates*, 299 F.R.D. at 614 (citing *Athena Feminine Techs., Inc. v. Wilkes*, No. C10–4868 SBA, 2013 WL 450147 at *2 (N.D. Cal. Feb. 6, 2013) (compiling cases)); Fᴇᴅ. R. Cɪᴠ. P. 15(a). (leave to amend should be "freely [given] when justice so requires"). But the Court is also to consider "(1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment." *Lyon v. U.S. ICE*, 308 F.R.D. 203, 214 (N.D. Cal. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[I]t is the consideration of prejudice to the opposing

---

[16] Specifically, Plaintiff points to statutes criminalizing harassment (RCW 9A.46.020), coercion (RCW 9A.36.070), promoting suicide attempts (RCW 9A.36.060), disorderly conduct (RCW 9A.84.030(1)(a)), criminal mischief (RCW 9A.84.010(1)), and criminal conspiracy (RCW 9A.28.040). Dkt. #42-1 at ¶¶ 322–74.

party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### 2. Analysis of Plaintiff's Supplemental Claims

Recognizing the lenient standard for amendment or supplementation, Defendants only challenge select portions of Plaintiff's proposed amended complaint, arguing that those additions are futile. But the Court notes that demonstrating futility on a motion for leave to amend is not an insubstantial hurdle. *Rosas v. GEICO Cas. Co.*, 365 F. Supp. 3d 1123, 1128 (D. Nev. 2019) ("Amendment is futile only if no set of facts can be proven under the amendment that would constitute a valid and sufficient claim.") (citing *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). The merits of Plaintiff's claims are better left for fully briefed motions. *See Broadcom Corp. v. NXP Semiconductors N.V.*, No. 8:13-CV-0829-MRP-MANx, 2014 WL 12577095 at *3 n.1 (C.D. Cal. Mar. 12, 2014) ("Because Rule 15(a) reflects a 'strong policy . . . to facilitate a proper disposition on the merits,' motions to opposed [sic] proposed pleadings are better brought as motions to dismiss after the filing of the complaint.") (quoting *Hurn v. Retirement Fund Trust*, 648 F.2d 1252, 1254 (9th Cir. 1981)).

Further, the Court notes that Plaintiff has otherwise been granted leave to amend many of his dismissed claims and that this action remains in the early stages of litigation. Accordingly, the Court takes a permissive approach to Plaintiff's requested amendments. But Plaintiff should heed Defendants' objections to how he has asserted his claims to this point. Many of Defendants' complaints are well taken and Plaintiff should strive to address them,[17] if he can, in crafting any amended complaint he may file.

---

[17] This includes identifying Defendants individually where appropriate instead of pleading claims broadly against all Defendants.

However, the Court does agree that certain of Plaintiff's supplemental claims are, in fact, futile. For example, and most glaringly, is Plaintiff's attempt to add ADA employment discrimination claims against Individual Defendants. *See* Dkt. #56 at 5 (Defendants opposing those claims). Having previously noted that the ADA does not provide for individual liability on employment claims, the Court denies leave to plead those claims. The Court addresses the more nuanced claims in turn.

### a. Plaintiff's Proposed Criminal Claims[18]

Plaintiff's proposed amended complaint includes references to numerous Washington State criminal statutes. *See* Dkt. #42-1. Defendants of course point out that the state criminal statutes do not provide Plaintiff with a private cause of action. *See* Dkt. #56 at 6 (citing cases in support). But Plaintiff specifically indicates that he is not seeking to pursue criminal charges and is instead alleging intentional torts analogous to the cited crimes. Dkt. #42 at 9. The Court grants leave to replead the claims but must identify the specific common law torts—to the extent an equivalent tort exists—he complains of and may not allege "torts" by reference to state criminal statutes.

### b. Plaintiff's Proposed Unionizing Claims[19]

Defendants argue that any state law claims related to Plaintiff's unionizing efforts are precluded by the National Labor Relations Act. Dkt. #56 at 6 (citing *See San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 243–44 (1959)). Further, Plaintiff has apparently pursued those charges with the National Labor Relations Board and does

---

[18] Dkt. #42-1 at ¶¶ 322–374.

[19] Dkt. #42-1 at ¶¶ 285–98.

not address the issue in his reply,[20] effectively conceding the point. The Court does not grant leave to amend the complaint to add state law claims related to unionizing.

### c. Plaintiff's Proposed Harassment Claims[21]

Similarly, Defendants argue that Plaintiff may not assert a harassment claim under Chapter 10.14 of the Revised Code of Washington because "Washington does not recognize a cause of action for damages for civil harassment." Dkt. #56 at 7 (quoting *Phillips v. World Publ'g Co.*, 822 F. Supp. 2d 1114, 1121 (W.D. Wash. 2011)) (quotation marks omitted). Plaintiff does not contest the assertion in his reply, effectively conceding the point. The Court does not grant leave to replead state law harassment claims under Chapter 10.14.

### d. Plaintiff's Proposed Malicious Harassment Claims[22]

Defendants likewise argue that allowing Plaintiff to assert claims for malicious harassment is futile. Washington does provide a civil action based on the crime of malicious harassment, which Defendants acknowledge. WASH. REV. CODE §§ 9A.36.080, .083; Dkt. #56 at 7–8. But Defendants maintain that Plaintiff relies on anonymous internet posts and that Plaintiff "fails to connect any of the alleged 'threatening' comments based on race or national origin to defendant Khan or to any other defendant." *Id.* at 8. But Plaintiff does allege a factual basis for believing that Khan was plausibly involved with the activity and that other posters were Amazon employees. Dkt. #42-1 at ¶¶ 78–84 (specifically alleging that Khan was responsible for posts advocating violence based on the contents of the post and noting that use of one website

---

[20] Other than referencing his arguments on a motion that the Court denied.

[21] Dkt. #42-1 at ¶¶ 314–21.

[22] Dkt. #42-1 at ¶¶ 265–73.

ORDER – 20

was at least partially restricted to Amazon employees).  Plaintiff's claim may ultimately fail, but the Court cannot say that they are futile at this point and grants Plaintiff leave to replead them.

### e.  Plaintiff's Proposed Defamation Claims[23]

Conversely, the Court generally agrees with Defendants that Plaintiff's defamation claims—generally relying on the same "anonymous" internet claims—are futile.  Dkt. #56 at 8–11.  Plaintiff's claim of defamation requires that he "demonstrate (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages. . . . Proof of falsity requires that Plaintiff identify 'the precise statements alleged to be defamatory, who made them and where.'" *Castello v. City of Seattle*, No. C10-1457MJP, 2011 WL 6000781 at *8 (W.D. Wash. Nov. 30, 2011), *aff'd*, 529 F. App'x 837 (9th Cir. 2013) (citing *Mohr v. Grant,* 153 Wash.2d 812, 822, 108 P.3d 768 (2005) and quoting *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002)).  These specifics are necessary, at least in part, because mere opinions are protected and not actionable as defamation.  *Phillips*, 822 F. Supp. 2d at 1118 (citations omitted).

Here, the Court agrees with Defendants that Plaintiff's allegations, based largely on anonymous internet postings, do not adequately plead claims of defamation.[24]  Thus, the Court does not generally grant leave to plead defamation claims.  The exception, however, is Plaintiff's claims against Khan.  Because Plaintiff states a plausible basis for attributing specific comments to Khan, Plaintiff is granted leave to replead claims related to specific statements attributed to Khan, assuming Plaintiff can also adequately plead falsity.

---

[23] Dkt. #42-1 at ¶¶ 274–84.

[24] Defendants also note that, to the extent Plaintiff seeks to hold Amazon responsible for the conduct of its employees, employers are only "vicariously liable for tortious actions of their agents when the agent 'is acting on the principal's behalf.'" Dkt. #56 at 11 (quoting *McGrane v. Cline,* 973 P.2d 1092, 1094 (Wash. Ct. App. 1999)).

ORDER – 21

### f. Plaintiff's Proposed Intentional Infliction of Emotional Distress Claims[25]

"To prevail on a claim of outrage, the plaintiff must prove '(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress.'" Dkt. #56 at 11 (quoting *Trujillo v. Nw. Tr. Servs., Inc.*, 355 P.3d 1100, 1110 (Wash. 2015)). The Court agrees with Defendants that the statements and actions Plaintiff complains of are largely insufficient to support claims of outrage. *See id.* at 11–12 (noting high bar for finding conduct "outrageous"). More troublesome for the Court, Plaintiff does not assign actions or statements to singular Defendants and provides no authority establishing that Amazon can be held liable for the actions of its employees or that Defendants can be all be held responsible for their collective actions. Plaintiff is not granted leave to replead these claims.

### E. Plaintiff's Motion to Stay

Lastly, Plaintiff seeks to "stay the entire civil action pending investigations [by] EEOC, NLRB and WSBA." Dkt. #47 at 3. Plaintiff seeks this relief because he has sought additional relief from the EEOC, NLRB, and WSBA based on actions allegedly taken by Defendants after the filing of this lawsuit.

#### 1. Legal Standard

Whether to stay a lawsuit is within the court's discretion. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1105 (9th Cir. 2005). In considering a stay request, courts weigh the competing interests that will be affected:

> the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

---

[25] Dkt. #42-1 at ¶¶ 299–313.

*CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "'[I]f there is even a fair possibility that the stay . . . will work damage to some one else,' the party seeking the stay 'must make out a clear case of hardship or inequity.'" *Lockyer*, 398 F.3d at 1105 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

### 2. A Stay Is Not Appropriate

The Court once again finds Plaintiff's arguments for relief to be overly speculative and conclusory. Plaintiff relies on broad legal principals torn from cases dealing with stays in vastly varied contexts. Dkt. #47 at 3–4. Factually, Plaintiff focuses on the difficulty he will face by pursuing multiple proceedings,[26] especially as he is representing himself, does not have legal training, and has been battling illness. *Id.* at 9–10. Plaintiff further argues that the multiple proceedings will result in duplicative and wasteful actions. *Id.* at 6. But Plaintiff's argument overlooks that this is largely a difficulty of his own choosing and the lack of significant overlap between the proceedings. While Plaintiff believes he has a good chance of seeing a "valuable result" from the administrative actions, that "valuable result" does not relate to his legal claims in this action but to his interest in continuing to pursue this action. *Id.* at 11–12. The parallel actions appear unlikely to simplify the issues of this case as it proceeds.

Most glaringly, and as noted by Defendants and discussed by the Court above, Plaintiff's claims before the NLRB do not fall within this Court's jurisdiction. Dkt. #53 at 6–7; *supra* Part D.2.b. As a result, staying the action pending resolution of the NLRB process would not appear to simplify the issues in this case at all.

---

[26] Defendants note that Plaintiff is unlikely to be intimately involved in any resultant federal investigations or actions undertaken by the government. Dkt. #53 at 9–10.

Similarly, Defendants note that Plaintiff's WSBA complaint was summarily dismissed. Dkt. #54-2. While Plaintiff indicates he will appeal, any potential impact on this case appears to be mollified. Plaintiff believes he will have defense counsel disbarred. Short of that unlikely result, Plaintiff does not make clear what relief from WSBA will impact this case.

With the Court's decision therefore turning only on the existence of Plaintiff's additional EEOC charge, the Court does not find a stay to be appropriate. Plaintiff does not indicate how long the EEOC proceeding will take and overlooks his ability to shorten that process. *See* Dkt. #53 at 5 (Defendants noting courts' preference for avoiding indefinite stays and providing legal authority); 29 C.F.R. § 1614.407. Further, the mere possibility that Plaintiff's EEOC charge will result in parallel lawsuits is not a significant concern as Plaintiff, or Defendants, can seek appropriate relief at that time. Dkt. #55 at 3 (Plaintiff reiterating his belief that two federal lawsuits will be inefficient). Further, as Defendants note, Plaintiff gives little indication of how the second EEOC proceeding will "simplify the issues in this case or promote judicial economy." Dkt. #53 at 6.

Plaintiff fails to satisfy his burden of proof to establish that a stay is warranted. Many of Plaintiff's arguments simply rehash his earlier arguments supporting other motions. *See e.g.*, Dkt. #47 at 6–8. Plaintiff continues to rely on harm that *may* result from potential issues arising instead of focusing on establishing that those issues *will* arise.

## IV. CONCLUSION

Accordingly, and having considered the motions, the briefing, the declarations and exhibits submitted in support, and the remainder of the record, the Court finds and ORDERS:

1. Defendants' Partial Motion to Dismiss Under Rules 12(b)(1), 12(b)(5), and 12(b)(6) (Dkt. #8) is GRANTED IN PART as specified above. Plaintiff is granted leave to amend his claims in accordance with this Order.

ORDER – 24

2. Plaintiff's Motion to Remand (Dkt. #14) is DENIED.

3. Plaintiff's Motion to Disqualify Opposing Counsel for Conflict of Interest (Dkt. #35) is DENIED.

4. Plaintiff's Second Motion for Leave to Amend and Supplement Complaint (Dkt. #42) is GRANTED IN PART as specified above. Plaintiff is granted leave to amend his claims in accordance with this Order.

5. Motion to Stay Civil Action Pending Resolution of EEOC, NLRB and WSBA Proceedings (Dkt. #47) is DENIED.

6. Plaintiff may file an amended complaint **no later than thirty (30) days from the date of this Order**. Should Plaintiff choose to file an amended complaint, Plaintiff shall omit all claims that have been dismissed with prejudice and all claims on which he was not granted leave to amend, all as noted in this Order. Should Plaintiff choose not to file an amended complaint, Defendants Edwin Mwango, Andrew Berg, Joe Resudek, Robin Mendelson, Jeff Bezos, and Beth Galetti shall be terminated as case participants as specified above.

7. Nothing in this Order precludes Defendants from moving to dismiss any amended complaint should they believe such action is warranted and legally supported.

Dated this 25 day of November, 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE